PEOPLE *v.* McDONALD.

1. BURGLARY—EVIDENCE—SUFFICIENCY.

In a prosecution for burglary, evidence reviewed, and *held* sufficient to sustain a finding that respondent aided and abetted in the commission of the offense charged.

2. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS.

Where respondent, after being arrested, on being interrogated by the chief of police, denied having been in the vicinity where the offense was committed, and claimed a certain city as his residence, and, when shown a picture in a paper called "The Detective," at first denied, but afterwards admitted, that the picture was of himself, the picture was admissible to prove the falsity of the statements made by him as to his identity.

3. SAME—BURGLARY—ARGUMENT OF PROSECUTOR.

It was not error to permit the prosecuting attorney, in a prosecution for burglary, to urge before the jury, from the testimony, that respondent was a "bad man," and "as bright a man of his kind as was ever before a jury,"—particularly where respondent's counsel had argued that there was no evidence that respondent was a bad man.

4. SAME—CONDUCT OF ACCUSED.

Nor was it error for the prosecutor, in commenting on respondent's attitude after his arrest, to state that his position was that he was not bound to answer questions concerning himself, and that the position of an innocent man, when charged with crime, would be entirely different, and that he would lose no time in doing everything possible to convince the officers that he was innocent.

5. SAME—EXTRANEOUS MATTERS—HARMLESS ERROR.

In a prosecution for burglary, a picture of respondent, contained in a paper, which respondent at first denied but finally admitted was his, was introduced in evidence. Thereafter the prosecuting attorney, in referring to the picture in his argument, spoke of the contents of the paper. On objection the court ruled that it was improper to comment on any part of the paper except the photograph. *Held,* that, in view of the action of the trial judge, the error of the prosecutor in commenting on the paper was harmless.

Error to Jackson; Peck, J. Submitted April 24, 1903. (Docket No. 174.) Decided May 29, 1903.

Don A. McDonald was convicted of burglary, and sentenced to imprisonment in the State prison at Jackson for seven years. Affirmed.

*Elmer Kirkby*, for appellant.

*Forrest C. Badgley*, Prosecuting Attorney, for the people.

MONTGOMERY, J. Respondent was convicted of the offense of breaking and entering an office not adjoining to or occupied with a dwelling house, in the night-time, and brings error. It was not claimed by the prosecution that the respondent was the one who actually broke into the office, but it was claimed that the respondent was present at the block of which this office was a part, aiding and abetting in the commission of the offense.

Three points are urged for the respondent: *First*, that there was not sufficient evidence to connect respondent with the offense; *second*, that error was committed in permitting the introduction of a certain picture shown to the respondent by the chief of police; and, *third*, that the prosecuting attorney committed error in his summing up to the jury.

As to the first point, we cannot do better than to adopt the language of the learned circuit judge in denying a motion for a new trial. The statement is fully supported by the record, and clearly deduces just inferences from the testimony. It is as follows:

"I do not care to speak of all the evidence that had a bearing upon that question, but there are some features of it that were so impressible to my mind then, and are now, that it is perhaps proper for me to refer to them in determining this motion. So far as the evidence shows, the defendant was a stranger in this city. This burglary was committed in an office building, where many people have offices. The defendant was about that building. So far

as the evidence shows, nobody knew him. He was a stranger. He was seen many times during the day in and about that building. He was seen about upon the sidewalk in front of it, and at its front entrance, under such circumstances as would make him familiar with the building itself, and the habits, so far as he could learn them in a day, of the people doing business there. He bought cigars at the cigar-stand at the entrance in the morning. He visited this very office of the Metropolitan Insurance Company, and got a bill changed. He was about there at different hours of the day. About 7 o'clock in the evening this burglary was committed, and at a time when most of the occupants and people in the offices would naturally be away.

"Now, the evidence was that at the very time when the complaining witness, Schneider, was being bound, gagged, and tied to his chair, McDonald sat on the rail, looking towards this door. That occurred almost instantly after Schneider went into this office. Now, there can't be much mistake about such a thing as that. I presume the jury agreed, as most any reasonable persons would, that, of all the human beings on earth, McDonald, and McDonald alone, was looking out for the men who actually committed the burglary, knew that it was being committed, had seen those men go in there, knew that they were there when Mr. Schneider came in, saw Mr. Schneider go in, and sat on the rail while he was being bound, gagged, and tied to the chair. That is the evidence in this case,— that he was looking right at the door.

"Now, there is more than that. He was on hand there whenever any of the occupants of the building showed up. Dr. Lathrop came up with Mr. Schneider in the elevator. McDonald was not visible to the naked eye at that moment, as he would not naturally be to Mr. Schneider when in this office, and Dr. Lathrop noticed McDonald was not going out of the building. Dr. Lathrop was in his office only a moment. He got up, and picked up a letter that he had neglected to mail, and came right out for the purpose of mailing it. Then McDonald was there. At that instant, under the testimony, Schneider was being gagged, and there was no human being about those corridors on that floor, except McDonald. He was making some effort to get into the water-closet,—a place which offered a convenient view of the entrance to the Metropolitan Life Insurance Company. He didn't want to get into

the water-closet very bad, according to the testimony of Dr. Lathrop, because, as soon as the doctor called his attention to it, he says, 'The door is opened.' So the doctor hurriedly passed down, while McDonald maintained his point of observation around that corridor.

"Now, if we stop to think where a man could locate himself, what he would do, how he would act, where he would be, bear in mind that he must have known that Schneider had just gone into that office, for he was the only person who was about there, keeping watch, and must have known what was going on. Dr. Lathrop did not know, and passed down the elevator; but McDonald maintained his position.

"Now, it is not an unreasonable inference that a rational mind should draw the conclusion from all this evidence that McDonald knew what was being done, and was aiding and assisting in its being done. It could not have been done without McDonald's assistance,—without his aid. And it is not surprising that a jury should find from this evidence that McDonald was aiding, assisting, and encouraging the commission of this crime. And we must remember it was not the actual binding and gagging that McDonald was charged with; it was the aiding and assisting the actual perpetrators who bound and gagged Mr. Schneider, and had knocked the handle off the safe door. Mr. Schneider must have come on the scene just at the moment when the safe was being broken open, and something had to be done; and it is not possible that any man could sit on that rail, about 20 feet from that door, his eyes right on it, and not know anything about it."

The testimony as to the picture in question was as follows: Mr. Boyle, the chief of police, testified that, after the arrest of the respondent, he interrogated him as to his residence, etc., and that the respondent denied having been in the block in question, and claimed Detroit as his residence. Later Mr. Boyle showed him a picture in a paper called "The Detective," and asked him if that was not a picture of him (the respondent). Respondent at first denied it, but later said to the chief that he would admit that the picture was of himself. All this testimony was admitted without objection. Thereupon the picture

itself was offered in evidence. We think it was admissible for the purpose of showing the falsity of statements made by the accused as to his identity.

The argument of the prosecuting attorney complained of was as follows:

"It is always a bad man that does that, and there isn't any question about it. So we would naturally expect in a case of this kind, before we could ask for a conviction at the hands of a jury, that you are dealing with a bad man. And I want to say to you, gentlemen, that I believe this man is as bright a man of his kind as was ever before any jury on earth.

"*Mr. Kirkby:* I want an exception to that remark. There isn't any evidence in the case concerning it.

"*The Court:* I suppose Mr. Badgley is simply stating that from the circumstances and conduct. In that respect, he is entitled to speak of it.

"*Mr. Badgley:* He tells you that he is not obligated, under the law, when he was asked as to where he lived, and all those questions, to say a word, and I admit it. But, gentlemen of the jury, when I am arrested, charged with the commission of a burglary that I have nothing to do with, and I know that I must face a jury of 12 men unless I can explain my whereabouts, if there is any way on God's green earth that I can satisfy the officers or anybody else that I am entirely innocent, I am going to lose no time in doing it; and so are you, and so is Mr. Kirkby, and so is every other man who is innocent.

"*Mr. Kirkby:* I take an exception to that.

"*Mr. Badgley:* You can take your exception.

"*The Court:* Go on.

"*Mr. Badgley:* And, gentlemen, after this man had told the chief where he lived, and what his business was, then he was shown his picture in this paper, which is known as 'The Detective,' and which the chief showed to him. 'Oh, no, Chief, that is not me,' he said. But, gentlemen, while this man had been telling the chief where he lived and what his business was, and before he had told him that, this little paper had come to Chief Boyle's hands, telling him who this man was and where he lived; and that paper told him that his name was not McDonald.

"*Mr. Kirkby:* I object to the prosecutor stating what that paper told him.

" *The Court:* The paper itself is not in evidence. The front part and face of the photograph is all there is about it, and that is all it is proper to comment on."

It is said in the brief of the prosecuting attorney that in the argument for the respondent it was stated that there was no evidence that he was a bad man, and that the first portion of the argument above quoted was in reply to this statement. We think it was competent for the prosecutor to draw inferences from the testimony. We also think the comment made by the prosecutor upon the respondent's attitude after his arrest was fair argument. The comment as to the paper was more doubtful, as it was not in evidence; but it was promptly checked by the circuit judge before any harm could have been done to the respondent.

The conviction is affirmed.

The other Justices concurred.